UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN FELDER,                                    Case No. 13-12573

                    Plaintiff,                   Paul D. Borman
v.                                               United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                 Michael Hluchaniuk
                                                 United States Magistrate Judge
                    Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 12)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On June 12, 2013, plaintiff Karen Felder filed the instant suit seeking

judicial review of the Commissioner's unfavorable decision disallowing benefits.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Paul D. Borman referred this matter to the undersigned for the purpose of

reviewing the Commissioner's decision denying plaintiff's claim for disability

insurance benefits.  (Dkt. 2).  This matter is before the Court on cross-motions for

summary judgment.  (Dkt. 9, 12).

### B.    Administrative Proceedings

Plaintiff filed the instant claim for disability and disability insurance benefits

on September 28, 2010, alleging disability beginning October 27, 2009.  (Dkt. 7-5,

Pg ID 148-50). Plaintiff's claims were initially disapproved by the Commissioner on February 9, 2011. (Dkt. 7-3, Pg ID 87). Plaintiff requested a hearing and on November 1, 2011, plaintiff appeared, with counsel, before Administrative Law Judge ("ALJ") Andrew G. Sloss, who considered the case de novo. (Dkt. 7-2, Pg ID 57-71). In a decision dated December 8, 2011, the ALJ found that plaintiff was not disabled. (Dkt. 7-2, Pg ID 43-54). Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on April 10, 2013, denied plaintiff's request for review. (Dkt. 7-2, Pg ID 28-30); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.     FACTUAL BACKGROUND

### A.     ALJ Findings

Plaintiff was born in 1956 and was 55 years old at the time of the administrative hearing, and 53 years of age on the alleged disability onset date. (Dkt. 7-2, Pg ID 60; Dkt. 7-5, Pg ID 88). Plaintiff had past relevant work as an inspector/assembler. (Dkt. 7-2, Pg ID 53, 68). The ALJ applied the five-step

disability analysis to plaintiff's claim and found at step one that plaintiff had not

engaged in substantial gainful activity since the alleged onset date of October 27,

2009.  (Dkt. 7-2, Pg ID 48).  At step two, the ALJ found that plaintiff's

osteoarthritis of the hands, knees, and back and obesity were "severe" within the

meaning of the second sequential step, but that plaintiff's carpal tunnel syndrome

was not severe.  (Dkt. 7-2, Pg ID 49).  At step three, the ALJ found no evidence

that plaintiff's combination of impairments met or equaled one of the listings in the

regulations.  (Dkt. 7-2, Pg ID 49).

The ALJ determined that plaintiff had the following residual functional

capacity ("RFC"):

> to perform less than a full range of sedentary work as
> defined in 20 CFR 404.1567(a) in that she must be
> allowed to sit or stand alternatively at will provided that
> she is not off task for more than 10% of the workday.
> She can occasionally climb, stoop, crouch, kneel, or
> crawl and can frequently balance.

(Dkt. 7-2, Pg ID 49-53).[1]  At Step Four, the ALJ found that plaintiff was able to

perform her past relevant work as an inspector, as she last performed it.  (Dkt. 7-2,

---

[1] The ALJ noted that a different ALJ issued an unfavorable decision on October 26, 2009, finding that plaintiff was capable of a limited range of sedentary work.  (Dkt. 7-2, Pg ID 46; Dkt. 7-3, Pg ID 73-83).  The ALJ acknowledged that this prior finding concerning plaintiff's RFC is binding absent evidence of an improvement or change in condition since prior to the hearing.  (Dkt. 7-2, Pg ID 46, citing *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997); Acquiescence Ruling 98-4(6)).  The ALJ here found that plaintiff is more limited than determined by the prior ALJ, but that she still can perform a limited range of sedentary work activity.  (Dkt. 7-2, Pg ID 46).

Pg ID 53-54). Based on the foregoing, the ALJ concluded that plaintiff had not been under a disability from October 27, 2009 through the date of the decision. (Dkt. 7-2, Pg ID 54).

### B. Plaintiff's Claims of Error

Plaintiff disputes that she could perform her past relevant work as an inspector. She contends the ALJ improperly delegated his authority to the vocational expert in making the Step Four finding. According to plaintiff, an ALJ's decision finding that a claimant can perform past relevant work must clearly state the rationale and specifically indicate the evidence that leads to the conclusion, citing *Hargenrader v. Califano*, 575 F.2d 434 (3d Cir. 1978); *Young v. Apfel*, 39 F. Supp.2d 1327 (N.D. Okla. 1999); and Social Security Ruling (SSR) 82-62, and this analysis cannot be delegated to the vocational expert at Step Four of the sequential analysis. Plaintiff contends that the ALJ asked the vocational expert to assume one hypothetical, and that hypothetical resulted in the vocational expert testifying that plaintiff could perform her past relevant work. (Tr. 41-42). Plaintiff argues that this constitutes an improper shift of the ALJ's fact-finding responsibility and is an error of law that requires a remand for further proceedings.

Plaintiff also complains that the ALJ ignored the vocational expert's answer to the follow-up question regarding medication and pain and how, if this combination precluded a hypothetical person from performing work on a schedule

4

of five days per week, eight hours per day, and forty hours per week, that would be work preclusive. (Tr. 42-43). Plaintiff contends that if the ALJ would have considered the follow-up question in the hypothetical, it would be clear that plaintiff was unable to perform her past relevant work or any other work. Plaintiff further asserts that the Third Circuit held in *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112 (3d Cir. 2000), that it is clear error for an ALJ to make a past relevant work determination that is contrary to uncontroverted evidence presented by the claimant. Plaintiff argues that the ALJ here opined, contrary to the uncontroverted evidence presented by plaintiff, that plaintiff could perform her past relevant work. (Tr. 26).

Plaintiff further asserts that it is well established that when the ALJ finds that an individual has the capacity to perform past relevant work, the determination must contain specific findings of fact: (1) as to the individual's RFC, (2) as to physical and mental demands of the past job or occupation, and (3) whether the individual's RFC would permit a return to their job or occupation, *see* SSR 82-62, and those findings must be supported by substantial evidence. Plaintiff contends that in this case, there are no specific findings as to any of the above three elements. Specifically, plaintiff argues that there are no specific findings as to why the ALJ chose to ignore plaintiff's testimony of her impairments and the limiting effects of those impairments and, contrary to the medical evidence, posed a

hypothetical question that ignored plaintiff's limitations and abilities.

Plaintiff asserts that in *Poindexter v. Apfel*, 94 F. Supp.2d 1176 (D. Kan. 2000), the court determined that the ALJ had delegated his fact-finding responsibilities at Step Four of the sequential analysis to the vocational expert and that such a practice is something that the 10th Circuit discourages. The *Poindexter* court cited *Winfrey v. Charter*, 92 F.3d 1017 (10th Cir. 1996), for the proposition that "when the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review." *Id*. Plaintiff further asserts that the court in *Dodds v. Commissioner of Social Security*, 2002 WL 1880754 (E.D. Mich. June 30, 2002), held that "the ALJ was not required to consult a VE to determine plaintiff's residual functional capacity. Determining past relevant work experience involves a determination of the 'physical and mental demands of jobs a claimant has performed in the past.' . . . In this regard, the claimant is the 'primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work.' [ ] Such an inquiry occurs at Step 4 and does not require the use of vocational testimony." *Id*. at *3 (citing *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996)). Plaintiff continues that while it appears there are no cases directly on point in this District or Circuit with the preceding

6

paragraph's argument, the *Dodds* case affirms that "Step 4 . . . does not require the use of vocational expert."  According to plaintiff, that is because Step Four is the ALJ's fact-finding responsibility.  Plaintiff concludes that the ALJ here improperly delegated his analysis regarding past relevant work to the vocational expert.  According to plaintiff, this improper shift of the ALJ's fact-finding responsibility was an error of law that requires a remand for further proceedings.  Plaintiff argues that the decision of the ALJ should be reversed and benefits awarded, as there is substantial evidence supporting the ALJ's follow-up question–one's inability to work a forty-hour work week due to medication and pain–that concludes there is no past work or any other work plaintiff would be able to perform.  (Tr. 43).

Plaintiff also argues that the ALJ failed to properly assess plaintiff's credibility and failed to properly evaluate the medical records, and thus formed an inaccurate hypothetical that did not accurately portray plaintiff's impairments.  Plaintiff asserts that it is documented that she has osteoarthritis of the hands, knees and back, and obesity, yet the ALJ found the claimant is capable of performing her past relevant work as an inspector.  (Tr. 26).  Plaintiff contends that this determination is erroneous.  Plaintiff testified at the hearing that she can stand and walk for only 20 minutes at a time, and she can sit for 20 to 25 minutes at a time before she has to stand and stretch.  (Tr. 36).  In addition, plaintiff states she has carpal tunnel syndrome which causes her numbness, pain, and tingling, and, as a

7

result, she wears a brace and drops things frequently, and struggles with normal every-day activities such as buttoning pants or fastening a bra.  (Tr. 34-35, 39).  In fact, plaintiff asserts that right hand surgery was recommended, but she opted not to have that performed.  (Tr. 35).  Plaintiff asserts that because of all this, she is unable to work.

Plaintiff continues that because she has had numerous severe impairments, it seems unlikely, and rather flawed, to find, as the ALJ did in his first hypothetical question, that plaintiff would be capable of performing less than the full range of sedentary work in that she must be allowed to sit or stand alternatively at will provided she is not off task more than 10% of the workday; she can occasionally climb, stoop, crouch, kneel, or crawl and can frequently balance.  (Tr. 22).  According to plaintiff, a finding that she is capable of performing her past relevant work subject to the above does not adequately address her physical limitations.  Plaintiff further argues that she is incapable of performing her past relevant work because that job requires sitting or standing for extended periods of time, and possible walking, bending, kneeling, crouching, or stooping,.  Therefore, plaintiff concludes, she is not capable of performing any work.  Plaintiff further contends that her condition requires her to take unscheduled breaks throughout the day and she would not be able to sustain a forty-hour work week, which would be work preclusive.  (Tr. 43).  Plaintiff therefore asks this Court to reverse the decision

8

denying benefits and remand this case with an award of benefits.  In the alternative, plaintiff asserts that the case should be remanded for further proceedings consistent with the above arguments.

### C.    The Commissioner's Motion for Summary Judgment

The Commissioner first argues that plaintiff has failed to brief her claim with sufficient specificity to avoid waiver.  Specifically, the Commissioner contends that plaintiff waived any argument that the ALJ failed to evaluate her credibility because, after some boilerplate language unconnected to the facts of this case, plaintiff essentially argues that she testified to work-preclusive limitations, the ALJ did not adopt those limitations, and thus the ALJ erred.  The Commissioner asserts that this argument is inadequate to avoid waiver because, despite plaintiff's recitation of her testimony, she fails to explain why it was erroneous for the ALJ to decline to accept it.  Plaintiff asserts that the ALJ should have believed her testimony concerning her limitations, but fails to develop that point at all or otherwise explain why the ALJ's credibility finding was erroneous, leaving "the Commissioner and this Court to wonder why he thinks the ALJ should have been required to find h[er] credible."  *See Burger v. Comm'r of Soc. Sec.*, 2013 WL 2285375, at \*5 (E.D. Mich. May 23, 2013).  The Commissioner argues that plaintiff has not presented any argument as to why that testimony had to be believed.  The Commissioner continues that, to the extent that an argument can be

9

discerned, plaintiff appears to argue that the ALJ can only properly consider a
claimant's testimony by accepting that testimony, which is contrary to well-
established law. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230,
1235 (6th Cir. 1992) ("It is well established that an ALJ . . . is required to
incorporate only those limitations accepted as credible by the finder of fact.").

The Commissioner goes on to argue, without waiving her waiver argument,
that the ALJ's credibility finding, which is entitled to deference, is well-supported.
The Commissioner contends, as an initial matter, the ALJ did not summarily reject
all of plaintiff's allegations; rather, to the contrary, the ALJ recognized that
plaintiff's obesity and osteoarthritis of the hands, knees, and back were severe
impairments because they imposed more than minimal limitations on her ability to
perform basic work activities. (Tr. 22). After determining that plaintiff's
impairments did not meet or medically equal the severity of one of the listed
impairments, the ALJ evaluated the medical and other evidence to form an
assessment of plaintiff's residual functional capacity–that is, the most she could
still do despite her limitations–and reasonably determined that plaintiff could
perform less than a full range of sedentary work. (Tr. 22). The ALJ found that
plaintiff would require a sit/stand option at will, provided that she not be off task
for more than 10% of the workday, and that plaintiff could only occasionally
climb, stoop, crouch, kneel, or crawl and frequently balance. (Tr. 22). The

Commissioner argues that the ALJ's residual functional capacity findings reflects that the ALJ credited many of plaintiff's complaints to the extent that they were supported by the record.  However, the Commissioner continues, as detailed below, the ALJ reasonably declined to accept plaintiff's allegations of disabling pain or symptoms.

First, the ALJ noted that the objective evidence did not support the severity of plaintiff's allegations.  The Commissioner recognizes that while objective evidence is not the only factor relevant to determining the credibility of a claimant's symptoms, it remains a "useful indicator" for the ALJ when evaluating the credibility of plaintiff's symptoms.  *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.").  According to the Commissioner, the ALJ acknowledged that plaintiff's x-rays and treatment notes revealed advanced degenerative changes in her right knee, moderately advanced degenerative changes in her left knee, and degenerative changes in her cervical spine (Tr. 23, citing Tr. 182, 202), and the ALJ pointed out that these objective findings were consistent with treatment notes from 2010 referring to plaintiff's "bad knees."  (Tr. 23, citing Tr. 187, 221). However, the Commissioner continues, the ALJ explained that the "evidence does

11

not show significantly abnormal findings such as significant limited range of motion, motor weakness, muscle atrophy, sensation loss, or reflex abnormalities that are generally associated with intense and disabling pain." (Tr. 24). For example, in September 2010, examination results revealed that plaintiff retained full strength in her legs and no instability in her knees despite significant crepitation. (Tr. 183). The ALJ also referred to the findings from Asit K. Ray, M.D., who examined plaintiff in February 2011 and noted, on examination, that plaintiff walked with slight waddling due to her obesity but could walk on her tip-toes and heels, get on and off the examination table, and move from a seated position to standing without difficulty. (Tr. 212). Further, plaintiff had a normal range of motion in her spine, elbows, wrists, and hips. (Tr. 218). Dr. Ray opined that plaintiff's mobility was a little slow due to her obesity but that she would be able to perform her usual and customary activities, including her occupational duties, without any restrictions. (Tr. 213). The Commissioner argues that this evidence was inconsistent with plaintiff's allegations of disabling symptoms.

The Commissioner further argues that, as required by the regulations, the ALJ discussed other evidence of record in addition to the objective medical evidence. *See* 20 C.F.R. § 404.1529(c)(3) (listing the factors an ALJ may consider in evaluating a claimant's credibility). For example, the ALJ considered the extent to which plaintiff had undergone treatment for her various problems and noted that

12

plaintiff had been treated conservatively with medication.  20 C.F.R.

§ 404.1529(c)(3)(iv)-(v) (an ALJ may consider a claimant's treatment or other

measures used to relieve pain).  The Commissioner further notes that the ALJ

pointed out that plaintiff had not been prescribed braces for either her back or

neck and that she did not require a cane to walk.  (Tr. 24).  In addition, "despite

admitting that physical therapy provided relief improvement, [plaintiff] did not

re-engage in such activity.  Moreover, she also has not sought chiropractic or

occupational therapy treatment and has not undergone any injections, been

prescribed a TNS [sic] unit, or referred to pain management.  Surgery has not been

recommended on her knees, back, or hands."  (Tr. 24-25).  The ALJ also noted that

plaintiff was not always compliant with treatment recommendations.  For example,

although plaintiff was complaint with her medication and went to the gym, she was

just utilizing massage therapy but was not performing low impact exercise despite

recommendations to do so.  (Tr. 220).  The Commissioner further contends that, to

the extent that plaintiff complained that her medications caused her to feel

lightheaded, the ALJ limited her to only frequent balancing.  (Tr. 25).  However,

the ALJ noted that no problems associated with side effects had been reported to

her physician, Dr. Stevens.  (Tr. 25).

   The Commissioner asserts that the ALJ also noted that plaintiff's activities

did not support her alleged level of restriction.  (Tr. 25).  *See* 20 C.F.R.

§ 404.1529(c)(3)(I) (an ALJ may consider a claimant's daily activities in evaluating her credibility).  The Commissioner asserts that the record shows that plaintiff was able to drive, shop, and attend church (Tr.164-66), and she acknowledged that she could prepare meals with some occasional difficulty but did not complain of significant problems standing or with dropping items to Dr. Stevens.  (Tr. 164).  The Commissioner continues that, significantly, plaintiff did not quit work due to her medical condition, but testified that the position was eliminated when her plant closed.  (Tr. 37).

The Commissioner thus concludes that the ALJ's decision reflects that he did not reject plaintiff's statements about the intensity and persistence of her symptoms solely because the objective medical evidence did not support her statements, but rather considered other relevant factors as required by 20 C.F.R. § 404.1529(c)(3).  The Commissioner argues that while plaintiff may disagree with the ALJ's credibility assessment, she has failed to demonstrate a basis for overturning the finding, especially in light of the great weight and deference that an ALJ's credibility finding is entitled to on review.  *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  The Commissioner argues that because the ALJ's credibility finding is supported by substantial evidence, it should not be disturbed.

The Commissioner also argues that the ALJ properly relied on the vocational

expert's testimony to find that plaintiff could perform her past relevant work. According to the Commissioner, when considering the claimant's vocational background, the Commissioner is directed to "first compare [her] assessment of your residual functional capacity with the physical and mental demands of your past relevant work," 20 C.F.R. § 404.1560(b), and the Commissioner is required to find that the claimant is not disabled if the claimant remains capable of performing her past relevant work. 20 C.F.R. § 404.1520(f). The Commissioner asserts that, in making this determination, the ALJ "may use the services of vocational experts or vocational specialists ... to obtain evidence [the Commissioner] need[s] to help ... determine whether [the claimant] can do [her] past relevant work, given [her] residual functional capacity," 20 C.F.R. § 404.1560(b)(2), and the vocational expert may "offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work. . . ." 20 C.F.R. § 404.1560(b)(2).

The Commissioner continues that, contrary to plaintiff's argument, the Sixth Circuit has held that vocational expert testimony may constitute substantial evidence to support the ALJ's determination that the claimant is able to perform past relevant work. *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007). The Commissioner further contends that this Court recently rejected an

15

identical argument to the one that plaintiff now raises. *Lopez v. Comm'r of Soc. Sec.*, 2013 WL 6409959, at *7 (E.D. Mich. Dec. 9, 2013) (claimant's " argument that the ALJ committed legal error by relying on [vocational expert] testimony to support her determination that Plaintiff was able to perform his past relevant work is without merit."). Accordingly, the Commissioner argues that this Court should find that the ALJ did not err in concluding that plaintiff was not disabled.

According to the Commissioner, plaintiff also incorrectly contends that the ALJ did not make specific findings with respect to her residual functional capacity, the demands of her past work, and whether plaintiff would be able to return to her past work. The Commissioner counters that the ALJ provided a detailed explanation of plaintiff's residual functional capacity (as explained above) and relied on the vocational expert's testimony to evaluate the demands of plaintiff's past work as an inspector. (Tr. 22, 26). The vocational expert noted that plaintiff's past work as an inspector/assembler was performed at the unskilled sedentary level (Tr. 177), and based on the vocational expert's uncontradicted testimony, the ALJ reasonably concluded that plaintiff was capable of performing her past relevant work despite her limitations. (Tr. 26). The Commissioner therefore concludes that the Court should affirm the decision of the Commissioner.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

    If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing, *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

19

198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.      Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

21

and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

## C.  Analysis and Conclusions

### 1.  The Vocational Testimony

Plaintiff disputes the finding that she could perform her past relevant work as an inspector, contending that the ALJ improperly delegated his authority to the vocational expert in making the Step Four finding. Plaintiff asserts that the ALJ asked the vocational expert to assume a hypothetical that led to the expert

22

testifying that plaintiff would be able to perform her past relevant work.  Plaintiff also argues that the choice of hypothetical limitations posed to the vocational expert did not reflect her true limitations, and that the ALJ did not abide by the requirements for a Step Four determination, as set forth in SSR 82-62.

Social Security Ruling 82-61 outlines the Commissioner's framework for evaluation at Step Four of the sequential analysis.  The Commissioner first considers whether the claimant has the RFC to perform the functional demands and duties of the past job as actually performed by the claimant.  SSR 82-61, 1982 WL 31387, at *2 (1982).  If so, the claimant is not disabled.  If the claimant is deemed unable to fulfill the job duties of the position as actually performed, the Commissioner is required to consider whether the claimant can perform the functional demands and job duties of the occupation "as generally required by employers throughout the national economy."  *Id*.  Again, if so, the claimant is not disabled.

The ALJ here determined that plaintiff had the residual functional capacity to perform a reduced range of sedentary work.  (Tr. 22).  When asked to assume a hypothetical individual with plaintiff's RFC, the vocational expert testified that such a person could perform plaintiff's inspector job.  (Tr. 41-42).  The ALJ then found "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to

23

perform it as actually and generally performed." (Tr. 27). Thus, the ALJ properly found, pursuant to SSR 82-61, that plaintiff can perform the functional demands and job duties of the inspector position "as actually and generally performed," and therefore plaintiff is not disabled, and this finding is supported by substantial evidence.

To the extent plaintiff contends that the ALJ erred in consulting a vocational expert in determining whether plaintiff was capable of returning to her past relevant work, that argument fails. It is well-settled that an ALJ is permitted, but is not required, to elicit the testimony of a vocational expert at Step Four of the sequential analysis. *See Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010); 20 C.F.R. § 404.1560(b)(2) ("We *may* use the services of vocational experts . . . to help us determine whether you can do your past relevant work[.]") (emphasis added); *see also Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) ("The regulations *permit* an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work, given his RFC.") (emphasis added). While "'the ultimate responsibility for making the necessary findings at step 4 rests with our adjudicators, we believe that it is appropriate for our adjudicators to consider evidence from a VE, VS . . . ." *Merkel v. Comm'r of Soc. Sec.*, 2008 WL 2951276, at *3-4 (E.D. Mich. July 29, 2008) (citing 20 C.F.R. § 404.1560(b)). Thus, the

24

ALJ's reliance upon the vocational expert's testimony to support his Step Four determination of non-disability was entirely proper.

And, plaintiff's argument that the ALJ did not abide by the requirements of SSR 82-62 in making the Step Four finding is also without merit. As explained above, in making the Step Four determination, a three-prong test must be met in order to find that a claimant can return to her past relevant work: (1) a finding of fact as to plaintiff's RFC; (2) a finding of fact as to the physical and mental demands of the past job; and (3) a finding of fact that plaintiff's RFC permits a return to that past job. SSR 82-62, 1982 WL 31386, at *2. The ALJ complied with these requirements by making a detailed RFC determination and finding that plaintiff's ability to perform a reduced range of sedentary work met the requirements for the position of inspector, as that position was actually and generally performed. *See Morrow v. Comm'r of Soc. Sec.*, 2014 WL 1908284, at *8 (E.D. Mich. May 13, 2014) ("With his residual functional capacity assessment and the vocational expert's testimony in hand, the ALJ was in position to conclude at step four that Morrow could perform her past relevant work as a file clerk."). While plaintiff would urge the Court to accept her professed degree of limitation, the ALJ's findings are well within the discretion allotted to the administrative fact finder. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Further, contrary to plaintiff's complaint that the ALJ erred by "ignoring" the hypothetical limitation of the inability to engage in sustained work activity on a regular and continuing basis for eight hours a day, five days a week, for a forty hour work week due to her medications and pain, the undersigned suggests that the exclusion of this limitation is well supported.  The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts."  *Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005).  "In fashioning a hypothetical question to be posed to a vocational expert, the ALJ is required to incorporate only those limitations he accepts as credible." *Griffeth*, 217 Fed. Appx. at 429.  "An ALJ is not required to accept a claimant's subjective complaints, and 'can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate.'"  *Id.* (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)).  Plaintiff has failed to cite to any record evidence to support the inability to work a forty hour work week due to medications and pain, and as explained below, the ALJ's credibility determination is supported by substantial evidence.  Accordingly, the ALJ was not required to include that limitation in plaintiff's RFC and plaintiff's claim of error fails.  *See Stanley*, 39 F.3d at 118 ("[T]he ALJ is not obligated to incorporate unsubstantiated complaints into his

hypotheticals.").

## 2.    The Credibility Determination

Plaintiff also takes issue with the ALJ's credibility determination, arguing in effect that the ALJ erred by discounting her testimony supporting a disability finding.  The Commissioner responds that plaintiff's charges are unfounded because she fails to refer to any medical evidence improperly discounted by the ALJ and in fact does not refer to any medical evidence in the record.  In fact, the Commissioner asserts that plaintiff's argument is so perfunctory as to amount to a waiver of that argument.  The undersigned recognizes that plaintiff neither offers an account of her medical record as part of her Motion nor does she assert that the ALJ's interpretation of her medical record was error.  (*See* Dkt. 9).  Rather, plaintiff attacks the ALJ's determination with regard to her credibility, arguing only that her testimony establishes that she is disabled.  (*Id.*).  The undersigned agrees with the Commissioner that the credibility argument presented by plaintiff's counsel is not well developed, but will nevertheless address plaintiff's credibility challenge.  As the Commissioner asserts, the ALJ's finding is consistent with the medical record and supported by substantial evidence.  The undersigned agrees.

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms.  *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1983).  "First, the adjudicator must consider whether

there is an underlying medically determinable physical or mental impairment . . . that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.*. Second, SSR 96-7p directs that, whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record." *Id.* Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See, e.g., Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues, *see Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987), and the court does not make its own credibility determinations. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d at 528. Rather, the court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed. . . ." *Kuhn v. Comm'r of Soc. Sec.*, 124 Fed. Appx. 943, 945 (6th Cir. 2005). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 485, 488 (6th Cir. 2005). "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey*, 987 F.2d at 1234; *see White v. Comm'r of Soc. Sec.*, 572 F.3d

28

272, 287 (6th Cir. 2009).  However, credibility assessments are not insulated from

judicial review.  Despite the deference that is due, such a determination must

nevertheless be supported by substantial evidence.  *See Walters*, 127 F.3d at 531.

Plaintiff contends that the ALJ's analysis was not supported by substantial

evidence based solely on her testimony as to her limitations.  However, as the

relevant Social Security regulations make clear, a claimant's "statements about

[her] pain or other symptoms will not alone establish that [she is] disabled."  20

C.F.R. §§ 404.1529(a), 416.929.  Instead, the Sixth Circuit has repeatedly held that

"subjective complaints may support a finding of disability only where objective

medical evidence confirms the severity of the alleged symptoms."  *See Workman v.*

*Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir. 2004); *see also Moon v.*

*Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("[T]hough Moon alleges fully

disabling and debilitating symptomology, the ALJ, may distrust a claimant's

allegations . . . if the subjective allegations, the ALJ's personal observations, and

the objective medical evidence contradict each other.").

The undersigned suggests that the ALJ's credibility findings were both well

explained and well supported.  The ALJ found that plaintiff's "statements

concerning her impairments and their impact on the ability to perform work

activity . . . are considerably more limited and restricted than is established by the

medical evidence."  (Tr. 24).  The ALJ noted that the medical findings do not

support the existence of limitations greater than the RFC here and do not sustain plaintiff's allegations of disabling pain, noting that inconsistencies between plaintiff's allegations and the medical evidence weaken plaintiff's credibility.  (Tr. 24-25).  In support of his findings, the ALJ noted that "the claimant has been managed via conservative care by way of medication management," and that "[t]he evidence does not show significantly abnormal findings such as significant limited range of motion, motor weakness, muscle atrophy, sensation loss, or reflex abnormalities that are generally associated with intense and disabling pain."  (Tr. 24).  The ALJ further noted that despite admitting that physical therapy provided relief and improvement, plaintiff did not re-engage in that activity, and also did not seek chiropractic or occupational therapy treatment or undergo any injections, and has not been prescribed a TENS unit or referred to pain management.  (Tr. 24-25).

As the Commissioner properly explains, the medical evidence supports the ALJ's findings.  While plaintiff claims her medical conditions are disabling, the record contains no physician's opinion to this effect.  Rather, the ALJ acknowledged that various radiologic studies revealed that plaintiff has advanced degenerative changes in her right knee and moderately advanced degenerative changes in her left knee, and degenerative changes in her cervical spine, and that examinations showed reports of "a bit of difficulty with her knees" and some trouble with stairs, and that plaintiff had muscle strength of 5+ in all groups with

sensation intact bilaterally and no instability relative to her knees.  (Tr. 23, citing Tr. 178-210, 220-31).  Further, the ALJ recognized that the consultative examiner Dr. Asit K. Ray observed that plaintiff walked with a slight waddling gait due to her obesity but could walk on her tiptoes and heels without any difficulty, was able to get on and off the examination table without difficulty, and was able to sit to stand and supine independently.  (Tr. 24, citing Tr. 211-19).  Dr. Ray observed that plaintiff had a normal range of motion in her cervical spine, elbows and wrists, and mildly tender patella compression along with 2+ crepitus bilaterally in her knees.  (*Id.*).  Plaintiff showed normal muscle strength and intact sensory examination, and Dr. Ray opined that plaintiff "would be able to perform her usual and customary activities including her occupational duties without any restriction."  (*Id.*).  The ALJ gave this opinion "great weight," but plaintiff did not address this opinion, or any of the medical evidence, in her motion.

The ALJ did not rely solely on the inconsistency of the medical record evidence with plaintiff's testimony, but further noted that plaintiff's activities do not support her alleged level of restriction, in that plaintiff acknowledged that she can prepare meals and was able to drive, shop and attend church.  (Tr. 25, 164-66).  The ALJ also properly noted that "the claimant did not quit work due to her medical condition but testified that the position was eliminated when her plant closed."  (Tr. 25).  Tellingly, plaintiff fails to support her contention that the ALJ

31

erred in evaluating the medical record evidence with any citation to the record, including failing to identify any evidence to support her assertion of an inability to work a forty hour work week due to her medication and pain, and therefore her claim of error should fail.

The undersigned notes that the ALJ's finding that plaintiff was limited to a restricted range of sedentary level work is not inconsequential. Under the Social Security regulations, "'sedentary work' represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by the medical impairments have *very serious functional limitations*." SSR 96-9p, 1996 WL 374185, at *3 (1996) (emphasis added). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec*., 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004). "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth*, 217 Fed. Appx. at 429; 20 C.F.R. § 404.1545(e). Thus, while the medical evidence indicates that plaintiff does have severe impairments as noted by the ALJ, it does not specifically support plaintiff's testimony regarding the extent of her limitations. Indeed, there is evidence to support the ALJ's finding that plaintiff was able to perform a limited range of sedentary work, and thus there is substantial

evidence to support the ALJ's finding that plaintiff was not fully credible, and the plaintiff's claim of error should be denied.

Because the ALJ reached his decision using correct legal standards and because those findings were supported by substantial evidence, the Court must affirm it, even if reasonable minds could disagree on whether the individual was disabled or substantial evidence could also support a contrary result. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.").

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:       July 11, 2014                    s/Michael Hluchaniuk
                                             Michael Hluchaniuk
                                             United States Magistrate Judge

34

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 11, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Richard J. Doud, attorney for plaintiff, and Lynn Marie Dodge, Assistant United States Attorney, and I certify that I have mailed by United States Postal Service the foregoing pleading to the following non-ECF participant(s), at the following address(es): <u>none</u>.

<u>s/A. Chubb for Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov